**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | | |
|---|---|---|
| JOANNE E. BAUMILLER, | ) | CASE NO. 1:21-CV-01782-JPC |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY | ) | CARMEN E. HENDERSON |
| ADMINISTRATION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |

## I.      Introduction

Plaintiff, Joanne Baumiller, seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Baumiller's Statement of Errors and AFFIRM the Commissioner's decision.

## II.      Procedural History

On August 28, 2019, Baumiller filed an application for DIB, alleging a disability onset date of July 1, 2017. (ECF No. 6, PageID #: 85). Baumiller was last insured on December 31, 2018, ending the relevant period of disability. (ECF No. 6, PageID #: 85). The application was denied initially and upon reconsideration, and Baumiller requested a hearing before an administrative law judge ("ALJ"). (ECF No. 6, PageID #: 123). On September 24, 2020, an ALJ held a hearing, during which Baumiller, represented by counsel, and an impartial vocational

expert testified. (ECF No. 6, PageID #: 55). On October 15, 2020, the ALJ issued a written

decision finding Baumiller was not disabled. (ECF No. 6, PageID #: 37). The ALJ's decision

became final on July 20, 2021, when the Appeals Council declined further review. (ECF No. 6,

PageID #: 26).

On September 17, 2021, Baumiller filed her Complaint to challenge the Commissioner's

final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 9, 11,

12). Baumiller asserts the following assignments of error:

> (1) The appointment of Andrew Saul as Commissioner of the
> Social Security Administration violated the separation of powers.
> As such, the decision in this case by an ALJ who derived her
> authority from Andrew Saul was constitutionally defective.
>
> (2) The ALJ erred at Step Two of the Sequential Evaluation when
> she failed to consider Baumiller's psychological problems as a
> severe impairment.
>
> (3) At Step Four of the Sequential Evaluation, the ALJ erroneously
> found that Baumiller could still perform her past work as a
> telephone operator.
>
> (4) The ALJ committed harmful error when she failed to find
> Baumiller's testimony credible and failed to properly consider
> Plaintiff's obesity and pain.

(ECF No. 9 at 1).

## III.     Background

### A.          Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Baumiller's hearing:

> The claimant alleged that she was unable to perform work due to
> the limiting signs and symptoms associated with her impairments.
> She indicated that she could lift/carry no more than 20 pounds,
> stand/walk no more than 10 to 15 minutes, and noted that she had
> to change positions no more than five minutes when sitting. She
> indicated that she struggled with chopping food due to wrist pain,
> hand stiffness, and tingling. Further, the claimant described

limitations with squatting, bending, reaching, kneeling, and stair climbing (1E).

(ECF No. 6, PageID #: 46–47).

### B.        Relevant Medical Evidence

The ALJ also summarized Baumiller's health records and symptoms:

### 1.        Mental Impairments

Treatment notes from January 16, 2018 reflect a diagnosis for depression for which paroxetine was prescribed. However, upon examination, she exhibited intact judgment and insight, normal recent and remote memory, and normal mood and affect (6F/10-13). On May 9, 2018, she exhibited a normal mood and affect, normal recent and remote memory, as well as intact judgment and insight upon examination (8F/9-15). Further, shortly after her date last insured, she continued to exhibited a normal mood and affect during an evaluation on March 29, 2019 (8F/8).

The claimant presented for a psychological consultative examination with Stephanie Towns, PsyD on May 19, 2019. She reported a history of diagnoses for depression and anxiety for which she treated with psychotropic medication. At the time of the evaluation, she described symptoms that included depressed mood, hypersomnia, amotivation, fatigue, worthlessness, and decreased concentration. Upon examination, she appeared appropriately groomed, was polite, and made good eye contact. The claimant appeared attentive, was able to count from one to five forward and backward, spell the word WORLD forward and backward, and recall three of three words after both a short and long-term delay. Her affect was largely euthymic, correctly repeated one of two sentences, provided abstracted responses on a similarities task, and appeared to have fair insight and judgment. She was assessed with major depressive disorder (7F).

Based on the evaluation, Dr. Towns provided the following functional assessment. There was no evidence that the claimant would have difficulty comprehending, executing, or recalling instructions. She demonstrated no difficulty with regard to concentration and gave no indications that she would have difficulty with task persistence. The claimant exhibited appropriate social skills and did not demonstrate an inability to utilize these skills consistently. Finally, she appeared to have the skills to cope with normal stressors effectively (7F).

(ECF No. 6, PageID #: 43–44).

## 2.    Physical Impairments

The claimant experienced signs and symptoms associated with her severe impairments. A January 18, 2013 left knee MRI showed moderate chondramalacia patella with small joint effusion (1F/7). On July 21, 2014, a lumbar MRI revealed L5/S1 spondylolisthesis and left parasagittal annular displacement at the L2 level with mild to moderated associated nerve root impingement (1F/10-11). May 23, 2016 right knee x-rays showed evidence of moderate patellofemoral degenerative joint disease with sclerosis, joint space loss, and osteophyte formation (1F/15-16). The claimant presented for an evaluation of low back pain on January 10, 2017. Lumbar spine x-rays showed moderate to advancing degenerative disc disease at L5-S1. However, her gait was not antalgic, strength testing was 5/5, reflexes were intact and symmetric, strength leg raise were negative, and she had painless range of motion of the hips (3F/6). Clinical findings from January 11, 2017 included decreased lumbar range of motion, but heel/toe raises and lower extremity sensation were intact (4F/5-7). During and evaluation on February 6, 2017, she exhibited normal range of motion in all extremities as well as normal muscle strength and tone (6F/16-20).

 The claimant sought treatment for her impairments. During an August 14, 2017 chiropractic evaluation with Robert Baumbick, DC, she exhibited decreased lumbar range of motion and a Faber test was positive in the bilateral spine bilaterally. However, her bilateral lower extremity reflexes were intact and symmetric bilaterally (5F/11-13). Chiropractic treatment notes from August 28, 2017 and September 22, 2017 reported no more than a little bit of pain, ranking her pain as a two out of ten on the pain scale. Additionally, it was noted that she was making good improvement (5F/20, 5F/27).

 Dr. Baumbick completed a functional assessment for the claimant on October 6, 2017. He outlined that her diagnoses included low back pain, L5 anterior spondylolisthesis grade I, mild disc degeneration, and subluxation. Her associated symptoms included low back pain with numbness and tingling in her toes. Significant associated clinical findings from August 14, 2017 included pain with lumbar range of motion, a positive Faber sign, and pain/tenderness to palpation of the lumbar spine. On September 11, 2017, she exhibited pain with left lateral bending, a positive Kemp on the left, and tenderness to pain at L3-5. Lumbar x-rays showed

grade I anterior spondylolisthesis, mild disc degeneration, and subluxation. After chiropractic treatment, she demonstrated/experienced a 75 percent improvement in her symptoms. Based on the findings, prolonged standing and repetitive bending should be limited while heavy lifting should be limited (5F/3-4).

Treatment for the claimant's impairments continued. During a January 16, 2018 evaluation with Michael Jesse, DO, she reported she was "hurting all over." Upon examination, the claimant appeared in no acute distress. Palpation of her joints was abnormal, but she had a normal gait and station, normal range of motion, and normal strength. She was assessed with arthralgia for which Duexis was prescribed (6F/10-15). On May 9, 2018, palpation of her joints/muscles was abnormal, but her gait and station were normal, her range of motion was normal, and she had normal strength and tone. Meloxicam was prescribed (8F/9-15). The record contains no evidence of additional treatment prior to the date last insured, but treatment notes from March 28, 2019 reflect that the signs and symptoms associated with her impairments remained stable. Notably, she reported she did not feel as though gabapentin was helping with her pain. However, she also explained that she was traveling to California to visit a friend. She appeared in on acute distress upon examination, and no musculoskeletal abnormalities were noted (8F/7-8).

Additionally, the record reflects that the claimant's weight has been at obese levels since the alleged onset date. Specifically, treatment records indicate that the claimant is five feet and ten inches tall, that her weight has been as high as 307 pounds, and that her body mass index reading has been as high as 44 (6F/12). As outlined previously, obesity is a medically determinable impairment that commonly leads to, and often complicates, chronic diseases. Therefore, it is reasonable to assume that the claimant's weight contributed to the limitations caused by her bilateral chondromalacia patella and degenerative disc disease of her lumbar spine. As such, a limitation to occasional stooping, kneeling, crouching and crawling is appropriate.

Therefore, the evidence supports that the claimant experienced limiting signs and symptoms associated with her severe impairments. A MRI of her left knee revealed moderate chondramalacia patella with small joint effusion (1F/7). Right knee x-rays showed moderate patellofemoral degenerative joint disease with sclerosis, joint space loss, and osteophyte formation (1F/15-16). Additionally, lumbar imaging showed L5/S1 spondylolisthesis

5

and left parasagittal annular displacement at the L2 level with mild to moderated associated nerve root impingement as well as degenerative disc disease at L5-S1 (1F/10-11, 3F/6). The claimant's weight was within the obese range (6F/12). Significant clinical findings included decreased lumbar range of motion, a positive bilateral Faber test of the spine, pain/tenderness to palpation of the lumbar spine, and abnormal palpation of her joints/muscles (4F/5-7, 5F/3-4, 5F/11-13, 6F/10-15, 8F/9-15).

(ECF No. 6, PageID #: 46–48).

## IV.  The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2018.

3. Through the date last insured, the claimant had the following severe impairments: bilateral chondromalacia patella, degenerative disc disease of the lumbar spine, and obesity (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except can only occasionally climb ramps and stairs, and no ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, crawl; and no exposure to unprotected heights, dangerous machinery, or commercial driving.

6. Through the date last insured, the claimant was capable of performing past relevant work as a Telephone Operator. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

(ECF No. 6, PageID #: 42–43, 45–46, 49).

## V.  Law & Analysis

6

### A.        Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B.        Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the

claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

## C.      Discussion

Baumiller raises four issues on appeal. First, Baumiller asserts that the ALJ's decision must be remanded because Andrew Saul's tenure as Commissioner of Social Security was unconstitutional. Second, Baumiller argues that the ALJ erred by failing to conclude that her mental impairments were severe. Third, Baumiller suggests that the ALJ incorrectly determined that she could perform her past work. Finally, Baumiller states that the ALJ inaccurately considered her credibility and her obesity. The Court will take each argument in turn.

### 1.   Baumiller Lacks Standing to Challenge the ALJ's Decision Based on Alleged Separation of Powers by the Commissioner

Baumiller asserts that "[b]ased on the fact that Andrew Saul's tenure as Commissioner of SSA was unconstitutional, and he was Commissioner at the time of the ALJ and Appeals Council decisions, this matter should be remanded for a *de novo* hearing." (ECF No. 9 at 11). Baumiller argues that because Acting Commissioner Saul was unconstitutionally appointed, the authority he delegated to the ALJ to hear and ultimately determine Baumiller's application for disability benefits was also unconstitutional. In support of this argument, Baumiller cites to *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020) for the proposition that Saul's appointment under 42 U.S.C. §

902(a) violates the separation of powers because it limits the President's authority to remove the Commissioner without cause. The Commissioner does not dispute that the relevant removal provision "violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." (ECF No. 11-1 at 9 (citations omitted)). Instead, the Commissioner argues that Baumiller is not entitled to relief because "even where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction actually caused her harm." (ECF No. 11-1 at 9–10 (citing *Collins v. Yellen*, 141 S. Ct. 1761, 1787–89 (2021))).

Before the Court may address the substance of this argument, the Court must first determine whether Baumiller has standing to challenge the alleged unlawful removal provision. The Commissioner does not specifically contest Baumiller's standing. However, even if the parties do not challenge standing, "federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) (citations omitted).

To establish Article III standing, a plaintiff must show that he or she has suffered an "injury in fact" that is "fairly traceable" to the defendant's conduct and would likely be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations omitted) (citations and internal quotation marks omitted). "[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to allegedly unlawful conduct of the defendant, not to the provision of law that is challenged." *Collins*, 141 S. Ct. at 1779 (internal quotation marks and citation omitted).

First, Baumiller argues that she has standing because the commissioner "failed to proffer any argument" that she lacked standing. (ECF No. 12 at 3). However, "[a]s a jurisdictional

requirement, standing . . . cannot be waived or forfeited." *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019) (emphasis added). Next, Baumiller argues that she has standing as a "disability claimant who [] received an unfavorable decision during the administrative process." (ECF No. 12 at 2–3 (citing *Brinkman v. Kijakazi*, 2021 WL 4462897, at *2 (D. Nev. Sept. 9, 2021) and *Sylvia v. Kijakazi*, 2021 WL 4692293, at *3 (N.D. Tex. Sept. 13, 2021))). Contrary to Baumiller's argument, in *Brinkman*, the court found that the plaintiff lacked standing to bring the constitutional challenge by failing to "allege facts that support a finding that her injury, the denial of disability benefits, can be or is traced to the conduct of the SSA Commissioner." 2021 WL 4462897, at *2. Citing to *Collins* and *Seila Law*, the court explained: "Because Plaintiff offers nothing that traces the decision by the ALJ in her case to any alleged injurious conduct by the SSA Commissioner, she has not demonstrated traceability and her constitutional violation claim fails for lack of standing." *Id.* Thus, *Brinkman* does not support Baumiller's argument.

In *Sylvia*, however, the court found that "[p]laintiff's separation-of-powers claim is both traceable and redressable such that she has standing to pursue it." *Sylvia A. v. Kijakazi*, No. 5:21-CV-076-M-BQ, 2021 WL 4692293, at *4 (N.D. Tex. Sept. 13, 2021), *report and recommendation adopted,* No. 5:21-CV-076-M-BQ, 2021 WL 4622528 (N.D. Tex. Oct. 7, 2021). The court explained that the traceability requirement was met "[b]ecause the ALJ derives authority directly from the Commissioner, and the ALJ's disability determination becomes the Commissioner's final decision." 2021 WL 4692293, at *3. In so finding, the court observed that "'[i]f the removal protections afforded the Commissioner violate the constitutional requirement of separation of powers, the Commissioner has no authority to delegate.'" *Id.* (alteration in original) (citations omitted). *Sylvia*'s conclusion, however, directly conflicts with the Supreme

Court's conclusion in *Collins* that the unlawfulness of a similar removal provision did not strip the relevant executive officer "of the power to undertake the other responsibilities of his office." 141 S. Ct. at 1788 n.23 (citing *Seila Law*, 140 S. Ct. at 2207–11). Accordingly, this Court does not find *Sylvia* to be persuasive. *See Rives v. Comm'r of Soc. Sec.*, No. 1:20-CV-02549, 2022 WL 1076216, at \*22 (N.D. Ohio Feb. 4, 2022), *report and recommendation adopted*, No. 1:20CV2549, 2022 WL 681273 (N.D. Ohio Mar. 8, 2022); *Reese v. Comm'r of Soc. Sec. Admin.*, No. 5:20-CV-2385, 2022 WL 1090538, at \*17 (N.D. Ohio Jan. 31, 2022), *report and recommendation adopted*, No. 5:20CV2385, 2022 WL 831122 (N.D. Ohio Mar. 21, 2022).

The mere receipt of an unfavorable decision is not sufficient to establish harm traceable to the alleged unlawful conduct.[1] The majority of courts having examined this issue have concluded that a party similarly situated to Baumiller lacks standing by failing to allege facts supporting that the denial of disability payments could be traced to the conduct of the Commissioner of the Social Security Administration. *See Walker v. Comm'r of Soc. Sec. Admin.*, No. 4:20-CV-02506-CEH, 2022 WL 1266135, at \*6 (N.D. Ohio Apr. 28, 2022) (collecting cases).

Therefore, Baumiller has failed to show compensable harm connected to the unconstitutional removal provision. Baumiller asserts that "based on the fact that Andrew Saul's tenure as Commissioner of SSA was unconstitutional, and he was Commissioner at the time of the ALJ and Appeals Council decisions, this matter should be remanded for a *de novo* hearing."

---

[1] Baumiller also asserts that President Biden terminated Mr. Saul and noted that Mr. Saul "had undermined and politicized Social Security disability benefits." (ECF No. 9 at 10). Because of this, Baumiller argues that "it can be inferred that the policy adjudication framework and processes established by Mr. Saul was the primary and lead reason for President Biden's dissatisfaction." (ECF No. 9 at 10). However, again, Baumiller does not explain how this affected her specific case. Baumiller was required to trace her unfavorable decision to the unlawful conduct, and she failed to do so. This argument is, therefore, without merit.

(ECF No. 9 at 11). However, "the fact that the removal restriction in § 902(a)(3) is unconstitutional does not entitle [Baumiller] to a remand for a new hearing and decision in [her] case." *Klapp v. Comm'r of Soc. Sec. Admin.*, No. 5:20-CV-02850-JDG, 2022 WL 310228, at *15 (N.D. Ohio Feb. 2, 2022). As the Supreme Court in *Collins* explained, "there is no basis for concluding that any head of the FHFA lacked the authority to carry out the functions of the office" because the removal restriction was unconstitutional. 141 S. Ct. at 1788.

Baumiller also asserts that "[t]he ALJ in this matter decided this case based on regulations promulgated by the Commissioner when he had no authority to issue the same. . . . This means that a presumptively inaccurate legal standard was utilized by the ALJ to adjudicate this claim as Mr. Saul did not have the authority to delegate this matter." (ECF No. 9 at 7–8). However, Baumiller fails to explain which regulations the Commissioner promulgated that the ALJ used to decide her case. Moreover, Baumiller's argument that the Commissioner had no authority to carry out the functions of office because the removal restriction was unconstitutional was rejected by the Supreme Court in *Collins*. 141 S. Ct. at 1788.

Finally, Baumiller argues that she did not receive "constitutionally valid" decisions by the ALJ and the Appeals Council. Baumiller fails to explain the basis for these arguments. To the extent Baumiller again asserts a challenge to Mr. Saul's delegation authority, this challenge fails under *Collins*, as discussed above.[2]

None of Baumiller's assertions describe the type of compensable harm stemming from an unconstitutional removal provision that was described in *Collins*. Baumiller does not state that when her application was pending the President was unable to remove Saul from office or

---

[2] To the extent Baumiller's argument could be viewed as an Appointments Clause challenge, Baumiller emphasized in her reply brief that she is not raising an Appointments Clause challenge. (ECF No. 12 at 7).

believed that he was unable to do so. *Collins*, 141 S. Ct. at 1789. Baumiller does not describe how she was harmed at the time of the ALJ's decision in October 2020 or when the Appeals Council denied her request for review in July 2021. Without a harm traceable to an unlawful action by the Commissioner, Baumiller does not have standing to challenge the constitutionality of § 902(a)(3). *See Rives*, 2022 WL 1076216, at \*22–23.

Accordingly, Baumiller's constitutional challenge fails because she "has not described compensable harm due to the unconstitutional removal provision in § 902(a)(3) under which Saul served as Social Security Commissioner." *Lynch v. Comm'r of Soc. Sec.*, No. 1:21CV0556-JDG, 2022 WL 614777, at \*17 (N.D. Ohio Mar. 2, 2022); *Miley*, 2021 WL 6064754, at \*1 ("[Plaintiff] lacks standing to contest the constitutionality of the ALJ's decision based on the president's removal authority.").

## 2. The ALJ Did Not Err in Concluding that Baumiller's Mental Impairments Are Not Severe

Baumiller next argues that the ALJ erred by failing to consider Baumiller's mental impairments as severe. At step two, the ALJ considers the severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not considered severe if it does not "significantly limit [one's] physical or mental ability to do basic work activities[.]" *Id.* § 404.1522(a). The Sixth Circuit "construes step two as a *de minimis* hurdle, intended to 'screen out totally groundless claims.'" *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) (citations omitted). When an ALJ determines that one or more of a claimant's impairments are severe, the ALJ must proceed to consider the "limitations and restrictions imposed by *all* of an individual's impairments, even those that are not severe." *Id.* (citations and quotation marks omitted). Typically, "any perceived failure to find additional severe impairments at step two [does] not constitute reversible error" as long as the ALJ considered all of the claimant's

impairments in the remaining steps. *Id.* (alteration in original) (internal citations and quotation marks omitted). However, the harmless error analysis does not apply here because it "is appropriate only when the ALJ properly considered any functional limitations arising from non-severe impairments when crafting [her] residual functional capacity finding." *Rose v. Comm'r of Soc. Sec.*, No. 2:14-CV-1901, 2015 WL 6735313, at *5 (S.D. Ohio Nov. 4, 2015) (citations omitted), *report and recommendation adopted*, No. 2:14-CV-1901, 2015 WL 7779300 (S.D. Ohio Dec. 2, 2015). Here, the ALJ did not discuss Baumiller's mental impairments when crafting the RFC and did not incorporate any limitations regarding them. "When no such limitations are incorporated into the RFC finding . . . [the harmless error] argument has no force." *Id.* (citations omitted). Instead, the question "becomes whether the ALJ's decision not to find any limitations arising from the condition in question is supported by substantial evidence." *Id.* The Court must, therefore, consider whether the ALJ's decision not to include any mental limitations in the RFC was supported by substantial evidence.

Notably, the ALJ thoroughly explained why he concluded that Baumiller's mental impairments were not severe. The ALJ considered all four broad areas of mental functioning and concluded that Baumiller had only mild limitations in each. Baumiller argues that the ALJ misinterpreted the evidence of Baumiller's testimony and the medical record. She asserts that the evidence documented that Baumiller had fair limitations with understanding, remembering, or applying information, concentrating, persisting, or maintaining pace, and adapting or managing herself. The Commissioner responds that Baumiller's combination of impairments did not warrant greater restrictions than what the ALJ found. The Commissioner states that Baumiller points to no medical opinion or prior administrative medical finding that support her argument.

The Court concludes that the ALJ supported her non-severity determination with

substantial evidence and this case is one in which the *de minimis* hurdle at Step Two was not met. Baumiller claims that she suffered from depression and anxiety. When determining whether a mental impairment is severe, an ALJ "must rate a claimant's degree of limitation" in the following broad functional areas: 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself. *Bittner v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-02204, 2022 WL 1458298, at *11 (N.D. Ohio Jan. 18, 2022). If the ALJ rates the degree of limitations as "none" or "mild," the ALJ will conclude that the claimant's impairment is not severe. 20 CFR § 404.1520a(d)(1). The Court reviews this decision for substantial evidence. *See Bittner*, 2022 WL 1458298, at *11. Regarding understanding, remembering, or applying information, the ALJ acknowledged that Baumiller alleged she had difficulty completing tasks, but reasoned that she also stated that she could read and prepare meals. Baumiller claims that she had difficulty remembering, but the ALJ noted that the record contained findings of intact memory. (ECF No. 6, PageID #: 328). As for interacting with others, the ALJ correctly noted that Baumiller did not allege any problems related to this domain and, indeed, she interacted with her friends daily. In regard to Baumiller's ability to concentrate, persist, or maintain pace, the ALJ explained that despite allegations of difficulty concentrating, Baumiller watches television and appeared attentive on examination. The ALJ also reasoned that Baumiller was able to count from one to five backward and spell the word "world" forward and backward. Finally, as to Baumiller's ability to adapt or manage herself, the ALJ stated that Baumiller reported that she is able to handle self-care, personal hygiene, and care for her cat. Additionally, the objective evidence demonstrated that Baumiller had appropriate grooming and hygiene and normal mood and affect. This suffices as substantial evidence for the ALJ's conclusion that Baumiller's mental impairments were not severe, and no limitations were

necessary.

Baumiller's arguments to the contrary consist of her pointing to her subjective allegations as proof of necessary limitations. However, as will be discussed in more depth below, the ALJ was not required to accept Baumiller's subjective allegations. The ALJ appropriately explained why he did not accept all of Baumiller's testimony and supported his conclusions with objective medical evidence. Additionally, Baumiller attempts to rely on an evaluation by Dr. Stephanie Towns, a consultative psychologist who examined Baumiller as part of the disability process. Baumiller states that "Dr. Towns related that Baumiller reported a number of symptoms consistent with depression which interfered with her ability to complete basic activities of daily living and diagnosed major depressive disorder." (ECF No. 9 at 12). Baumiller asserts that this is evidence of severe mental limitations. However, Baumiller misrepresents Dr. Towns' statements and the ALJ's reliance on them. First, the Court notes that it is not in dispute that Baumiller suffers from depression. Despite Baumiller's suggestions to the contrary, the ALJ acknowledged her diagnoses (ECF No 6, PageID #: 43), but found that they did not cause more than minimal limitations in Baumiller's ability to work. Second, Dr. Towns did not opine that Baumiller's symptoms interfered with her ability to complete basic activities of daily living. Dr. Towns simply stated that Baumiller reported that her symptoms interfered with her daily living. (ECF No. 6, PageID #: 385). In fact, Dr. Towns explicitly opined that there was no evidence that Baumiller had any difficulty in any of the four broad areas of functioning. (ECF No. 6, PageID #: 385). The ALJ appropriately relied on this opinion in making her decision and this opinion provides substantial evidence for the ALJ's RFC determination. Baumiller's depression simply did not limit her ability to work. Moreover, Baumiller points to no opinion that indicated that Baumiller required additional mental impairment limitations. The Court finds none upon its own

review. Thus, Baumiller's arguments are without merit. Accordingly, there is no reason to disturb the ALJ's mental impairment conclusions.

### 3.  The ALJ Properly Concluded Baumiller is Capable of her Past Work

Baumiller asserts that the ALJ erroneously found that she could still perform her past work as a telephone operator. This is essentially a challenge of the ALJ's RFC determination. At step four, the ALJ determines a claimant's RFC and whether a claimant can do her past relevant work. 20 CFR § 404.1520(a)(4)(iv). An RFC is "the most you can still do despite your limitations." *Id.* § 404.1545(a)(1). The RFC is based on all the relevant evidence in the claimant's record. *Id.* A court reviewing an RFC "decide[s] only whether there was substantial evidence to support the ALJ's RFC determination." *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 406 (6th Cir. 2018). If there is substantial evidence, the court will "defer to that decision even in the face of substantial evidence supporting the opposite conclusion." *Id.*

The ALJ concluded that Baumiller had the ability to "perform light work as defined in 20 CFR 404.1567(b) except [she] can only occasionally climb ramps and stairs, and no ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, crawl; and no exposure to unprotected heights, dangerous machinery, or commercial driving." (ECF No. 6, PageID #: 46). Baumiller's past work as a telephone operator was a semi-skilled job with a sedentary exertional level. (ECF No. 6, PageID #: 78). The vocational expert testified that a hypothetical person with Baumiller's RFC could perform her past work. (ECF No. 6, PageID #: 78). Baumiller notes that the vocational expert stated that she could not perform her past work if Baumiller was limited either to simple, routine tasks or to only frequent reaching, handling, fingering, and feeling. Baumiller seems to imply that the ALJ should have included such limitations in her RFC, precluding Baumiller from her past work. The Commissioner argues that the ALJ's RFC determination, and

17

thus her conclusion that Baumiller could perform her past work, was supported by substantial evidence. The Court agrees.

As discussed above, the ALJ's decision not to include any additional mental impairment limitations was supported by substantial evidence. There is no opinion stating that Baumiller should have been limited to simple, routine tasks. Regarding physical impairments, the ALJ discussed Baumiller's medical record, explained why she did not find her subjective allegations of pain consistent with the evidence, and supported her RFC with substantial evidence. The ALJ reasoned that Baumiller's treatment was limited and conservative. (ECF No. 6, PageID #: 48). She noted that clinical findings included a normal gait, 5/5 strength, intact and symmetric reflexes, negative straight leg raises, and normal range of motion of her extremities. (ECF No. 6, PageID #: 49). However, the ALJ found that some limitations were necessary. She explained:

> Nonetheless, functional limitations are warranted. To account for degeneration in her spine and bilateral knees, she should lift/carry no more than 20 pounds occasionally and 10 pounds frequently, stand/walk no more than six hours in an eight-hour workday, and no more than occasionally climb ramps and stairs. Due to joint/muscle abnormalities and loss of musculoskeletal range of motion, [she] should never climb ladders, ropes, or scaffolds, and no more than occasionally stoop, kneel, crouch, or crawl. Further, to account for the potential for gait abnormalities due to her bilateral knee degeneration along with the potential loss of maneuverability due to her obese body habitus, she should have no exposure to unprotected heights, dangerous machinery, or commercial driving

(ECF No. 6, PageID #: 48–49). Thus, the ALJ sufficiently explained and supported her RFC determination.

In an attempt to argue otherwise, Baumiller simply relates her medical record without

explaining how the objective medical evidence supported additional limitations.[3] She points to the State Agency reviewers' notations of findings of pain and tenderness but fails to mention that the State Agency reviewers found the same limitations as the ALJ. (ECF No. 6, PageID #: 90–91, 99–100). The State Agency reviewers also opined that Baumiller had no manipulative limitations—as would be required for her to be unable to perform her past work. (ECF No. 6, PageID #: 91, 100). In fact, Baumiller points to no opinion that additional limitations were required. Instead, she simply recites the medical record in an attempt to show that there was evidence supporting the need for limitations. This is insufficient. "[A] claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports her position. Rather, [the claimant] must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion." *Greene v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010). The Court concludes that there was sufficient evidence in the record to allow a reasonable mind to accept the ALJ's conclusion. The vocational expert's testimony that a person with Baumiller's RFC could perform her past work provides substantial evidence for the ALJ's decision. *See Thompson v. Comm'r of Soc. Sec.*, No. 3:11-CV-493-H, 2012 WL 2089709, at *12 (W.D. Ky. May 7, 2012) ("The testimony of a vocational expert may be substantial evidence to support a decision of the ALJ if that testimony is made in response to a hypothetical question that accurately portrays the mental and physical impairments of the claimant." (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–513 (6th Cir. 2010))), *report and recommendation adopted*, No. 3:11-CV-493-H, 2012 WL 2089708 (W.D. Ky. June 8, 2012). Accordingly, Baumiller's third argument is without merit.

---

[3] To the extent Baumiller relies on her subjective allegations of pain to support her argument, as will be discussed in the next section, the ALJ appropriately rejected such allegations and instead relied on the objective medical evidence.

**4. The ALJ Properly Considered Baumiller's Subjective Allegations of Pain and Obesity**

**a.    Subjective Allegations of Pain**

Baumiller next argues that the ALJ "committed harmful error when she failed to find Baumiller's testimony credible." (ECF No. 9 at 20). Baumiller asserts that "the ALJ did not properly detail Baumiller's testimony and make a defensible determination as to whether her testimony was consistent with her symptoms." (ECF No 9 at 23). Overall, Baumiller states that the ALJ failed to follow SSR 16-3p because she failed to give specific reasons for her credibility finding and was not clear in her analysis. In determining whether a claimant is disabled, the ALJ considers all of the claimant's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective evidence in the record. SSR 16-3P, 2017 WL 5180304, at *2. A claimant's subjective complaints "can support a claim for disability[] if there is also objective medical evidence of an underlying medical condition in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (citations omitted). However, the ALJ "is not required to accept a claimant's subjective complaints." *Id.* at 476 (citations omitted). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3P, 2017 WL 5180304, at *8. The ALJ "must clearly state [her] reasons" for discounting or rejecting a claimant's subjective complaints. *Harper v. Comm'r of Soc. Sec.*, No. 1:20-CV-1304, 2021 WL 2383833, at *11 (N.D. Ohio May 25, 2021) (citing *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)), *report and recommendation adopted*, No. 1:20-CV-1304, 2021 WL 2381906 (N.D. Ohio June 10, 2021).

Baumiller alleged that she could sit only 10 to 15 minutes at a time, and she needed to switch between standing and sitting every five minutes. She had difficulty with mobility and climbing stairs. She had numbness and tingling in her hands and she could not always grasp something. She stated that she could only lift 20 pounds. Contrary to her arguments, the ALJ acknowledged these allegations of pain (ECF No 6, PageID #: 46–47) and explained why she did not accept all of them. The ALJ reasoned:

> However, the claimant's statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent because the level of limitation alleged is not altogether supported by the objective findings. Treatment for the claimant's severe impairments was limited and conservative, and shortly after the date last insured she was able to take a trip to California (8F/7- 8). Additionally, the evidence supports clinical findings that include a normal gait, 5/5 strength, intact and symmetric reflexes, negative straight leg raises, normal range of motion of her extremities (4F/5-7, 5F/11-13, 6F/10-15, 6F/16-20, 8F/9-15).

(ECF No. 6, PageID #: 48). It is clear that the ALJ found that the objective medical evidence did not support all Baumiller's subjective allegations of pain. This finding is a sufficient reason to reject subjective allegations and is supported by substantial evidence. The Court also notes that the ALJ accepted certain allegations, concluding that Baumiller could neither climb stairs, ladders, ropes, or scaffolds nor carry more than 20 pounds. Baumiller points to no opinion that provided that more was required. Accordingly, the Court concludes that the ALJ properly considered Baumiller's subjective allegations of pain and explained why she did not accept all of them.

### b.    Obesity

Finally, Baumiller states that the ALJ failed to take the combination of Baumiller's obesity and her other physical impairments into account. SSR 19-2p "provides guidance on how [SSA] establish[es] that a person has a medically determinable impairment of obesity" and how

21

an ALJ should "evaluate obesity in disability claims." 84 Fed. Reg. 22924 (May 20, 2019). In relevant part, the regulation states that the RFC should account for "the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment." *Id.* The claimant has "the burden of showing specifically how [his] obesity, in combination with other impairments, limited [his] ability to a degree inconsistent with the ALJ's RFC determination." *Foss v. Comm'r of Soc. Sec.*, No. 1:16CV1907, 2017 WL 2912524, at *8 (N.D. Ohio June 20, 2017) (citations omitted), *report and recommendation adopted*, 2017 WL 2908857 (N.D. Ohio July 7, 2017).

Baumiller states that the combination of her obesity and other impairments precluded her from performing work at the light exertional level. She asserts that the ALJ's failure to consider such a combination was reversible error. Contrary to her argument, the ALJ specifically considered the effect of Baumiller's obesity on her other impairments. She stated:

> [T]he record reflects that the claimant's weight has been at obese levels since the alleged onset date. Specifically, treatment records indicate that the claimant is five feet and ten inches tall, that her weight has been as high as 307 pounds, and that her body mass index reading has been as high as 44 (6F/12). As outlined previously, obesity is a medically determinable impairment that commonly leads to, and often complicates, chronic diseases. Therefore, it is reasonable to assume that the claimant's weight contributed to the limitations caused by her bilateral chondromalacia patella and degenerative disc disease of her lumbar spine. As such, a limitation to occasional stooping, kneeling, crouching and crawling is appropriate.

(ECF No. 6, PageID #: 48). The ALJ explicitly stated that Baumiller's obesity contributed to limitations caused by her lumbar spine and knee impairments and then gave specific limitations accordingly. Thus, Baumiller's argument is inaccurate. Moreover, beyond her conclusory and incorrect statements, Baumiller failed to meet her burden by showing how her obesity limited her beyond the ALJ's RFC. Accordingly, the Court finds no reason to disturb the ALJ's decision.

## VI.    Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's

Statement of Errors and AFFIRM the Commissioner's decision.


Dated: June 16, 2022

> s/ *Carmen E. Henderson*
> CARMEN E. HENDERSON
> U.S. MAGISTRATE JUDGE

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after being served with a copy of this document. Failure to file
objections within the specified time may forfeit the right to appeal the District Court's order. *See
Berkshire v. Beauvais*, 928 F. 3d 520, 530–31 (6th Cir. 2019).