UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOANNE E. BAUMILLER, | ) Case No. 1:21-cv-01782 |
| Plaintiff, | ) Judge J. Philip Calabrese |
| v. | ) Magistrate Judge |
| | ) Carmen E. Henderson |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Joanne E. Baumiller applied for social security disability benefits. The Commissioner denied her application. Following a hearing, an administrative law judge did so as well. Plaintiff appealed, and the appellate council declined review, rendering the Commissioner's denial final. Then, Plaintiff sought review in federal court. The Magistrate Judge recommends affirming the Commissioner's decision, and Plaintiff objects. On September 9, 2022, the Court heard oral argument on one of Plaintiff's objections, which raises a constitutional question. For the reasons that follow, the Court **OVERRULES** Plaintiff's objections, **ADOPTS** the report and recommendation, and **AFFIRMS** the Commissioner's denial of Plaintiff's application for disability benefits.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2019, Ms. Baumiller applied for disability benefits, alleging a disability onset date of July 1, 2017. (ECF No. 6, PageID #167.) The application was denied,

and Ms. Baumiller requested a hearing before an administrative law judge. (*Id.*, PageID #123.) After the hearing, the administrative law judge denied Ms. Baumiller's application. (*Id.*, PageID #40–50.)

### A. Relevant Medical Evidence

#### A.1. Mental Impairments

In 2018, Dr. Michael L. Jesse noted Ms. Baumiller's diagnosis of depression and prescribed medication. (*Id.*, PageID #346–49.) On examination, however, Ms. Baumiller exhibited intact judgment and insight, normal recent and remote memory, and a normal mood. (*Id.*) Two more examinations within the following year also found that Ms. Baumiller exhibited a normal mood and affect. (*Id.*, PageID #393–401.)

In 2019, Ms. Baumiller underwent a psychological consultative examination with Dr. Stephanie Towns. (*Id.*, PageID #382–86; PageID #43–44.) Dr. Towns concluded that Ms. Baumiller had major depressive disorder. (*Id.*) During the evaluation, Ms. Baumiller described her symptoms as having a depressed mood, hypersomnia, amotivation, fatigue, worthlessness, and decreased concentration. (*Id.*) On examination, Dr. Towns found that Ms. Baumiller appeared appropriately groomed, polite, and made good eye contact. (*Id.*) Ms. Baumiller appeared attentive, could count and spell words forward and backward, had good recollection, and had fair insight and judgment. (*Id.*) Based on the evaluation, Dr. Towns provided a functional assessment and found no evidence that Ms. Baumiller had difficulty comprehending, executing, or recalling instructions; maintaining concentration and

task persistence; displaying appropriate social skills; or coping with normal stressors effectively. (*Id.*)

Later that year, a State agency psychological consultant, Dr. Karla Delcour, evaluated Ms. Baumiller. (*Id.*, PageID #86–89.) Dr. Delcour conducted a functional assessment and found that Ms. Baumiller had little to no limitation in the following areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (*Id.*) Overall, Dr. Delcour concluded that, although Ms. Baumiller had depression and bipolar disorder, she did not have severe mental impairments limiting her ability to work. (*Id.*)

A couple years later, State agency psychological consultant Juliette Savitscus evaluated Ms. Baumiller and reached the same conclusion regarding Ms. Baumiller's lack of severe mental impairments. (*Id.*, PageID #95–98.)

### A.2. Physical Impairments

In 2009, Ms. Baumiller met with Dr. Michael Banks complaining of injuries to the right foot and left ankle. (*Id.*, PageID #264.) During a later examination, Ms. Baumiller complained of right knee problems and an x-ray showed signs of mild degenerative changes. (*Id.*, PageID #265.)

In 2012, Dr. Mark Panigutti found Ms. Baumiller had bilateral knee contusions and bilateral ankle sprains related to a prior fall. (*Id.*, PageID #266.) An MRI was then ordered and performed. (*Id.*, PageID #267.) A left knee MRI showed moderate chondromalacia patella with a small joint effusion. (*Id.*, PageID #268.) Dr. Panigutti reviewed the MRI and assessed Ms. Baumiller with an accident-

aggravating patellofemoral degenerative joint disease. (*Id.*, PageID #269.) A later MRI of the lumbar spine indicated mild/moderate disc-related nerve root impingement and spondylolisthesis. (*Id.*, PageID #271–72.)

Over the next couple of years, Ms. Baumiller continued to complain of pain in her right knee and was assessed with moderate patellofemoral degenerative joint disease. (*Id.*, PageID #274–76.) To help alleviate the pain, she received a cortisone injection. (*Id.*)

In 2017, Dr. Mary Anthony examined Ms. Baumiller and assessed her with chronic lumbar spine pain, degenerative disc disease, and obesity. (*Id.*, PageID #292.) An X-ray indicated moderate to advanced degenerative disc disease at L5/S1. (*Id.*) A year later, Ms. Baumiller completed a function report. (*Id.*, PageID #190–97.) She reported issues staying in the same position for more than ten minutes but reported that she could lift/carry ten pounds. (*Id.*) Dr. Michael Jesse treated Ms. Baumiller for fibromyalgia (*id.*, PageID #345 & #399) and depression (*id.*, PageID #350). The State agency referred Ms. Baumiller for an examination. (*Id.*, PageID #382–86.)

The following year, Dr. Robert Baumbick completed a questionnaire for the State and diagnosed Ms. Baumiller with low back pain, L5 anterior spondylolisthesis grade I, mild disc degeneration, and subluxation. (*Id.*, PageID #308.) Dr. Baumbick reported Ms. Baumiller's pain and limits with prolonged standing, repetitive bending, and heavy lifting. (*Id.*, PageID #308–09.) Dr. Dimitri Teague also examined Ms. Baumiller and opined that she could lift and carry at the light level of exertion.

4

(*Id.*, PageID #90.) Dr. Steve McKee repeated this same residual functional capacity examination in 2020. (*Id.*, PageID #99–100.)

### A.3. Hearing Testimony

In 2020, an administrative law judge held a hearing to determine whether Plaintiff was disabled according to the Social Security Act's definition. (*Id.*, PageID #55.) At the hearing, Ms. Baumiller and an impartial vocational expert testified. (*Id.*)

Ms. Baumiller testified that, after her mother passed away, she developed depression and anxiety and went days where she could not get out of bed or function. (*Id.*, PageID #58–83.) She testified that she could not stand or walk for more than ten to fifteen minutes and could not lift more than twenty pounds. (*Id.*) She had to change positions every five minutes to prevent pain in her back and legs and had trouble going up and down stairs. (*Id.*) Generally, Ms. Baumiller reported restrictions in her ability to grasp objects, limiting her ability to cut food and hold a laundry basket. (*Id.*) Currently, she lives with her husband, has a driver's license, talks on the phone with friends and family, and can complete household chores such as preparing meals, washing dishes, and occasionally doing laundry. (*Id.*) Finally, Ms. Baumiller testified to her limitations in squatting, bending, reaching, kneeling, and climbing stairs. (*Id.*)

The vocational expert, Keven Ti, testified to Ms. Baumiller's past work as a telephone operator and answered hypotheticals about what limitations would prevent a person from maintaining employment in this occupation. (*Id.*, PageID #77–83.)

### B. Administrative Law Judge's Decision

The ALJ concluded that Ms. Baumiller was not disabled under the Social Security Act. (*Id.*, PageID #37.) Specifically, after considering the evidence presented, the ALJ conducted the five-step analysis of Section 404.1520(a). 20 C.F.R. § 404.1520(a).

The ALJ found that Ms. Baumiller had not engaged in substantial gainful activity since the alleged disability onset date. (ECF No. 6, PageID #42.) At step two, the ALJ found that Ms. Baumiller had the following severe impairments: bilateral chondromalacia patella, degenerative disc disease of the lumbar spine, and obesity. (*Id.*, PageID #43.) However, the ALJ did not find that Ms. Baumiller had severe mental impairments. (*Id.*, PageID #44.) At the next step, the ALJ found that Ms. Baumiller did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.

Finally, the ALJ found that Ms. Baumiller had the residual functional capacity to perform light work, with limitations for climbing ramps and stairs, stooping, kneeling, crouching, crawling, and using ladders, ropes, and scaffolds. (ECF No. 6, PageID #46.) She also found that Ms. Baumiller could not participate in work with unprotected heights, dangerous machinery, or commercial driving. (*Id.*) Based on this residual functional capacity, the ALJ determined that Ms. Baumiller could perform her past work as a telephone operator. (*Id.*)

6

Determining that Ms. Baumiller was not disabled, the ALJ did not proceed to step five. (*Id.*, PageID #48.) The ALJ's decision became final when the Appeals Council declined further review. (*Id.*, PageID #26.)

### C. Report and Recommendation

Ms. Baumiller filed a complaint challenging the Commissioner's decision. ([ECF No. 1](#).) Soon after, Plaintiff submitted a brief asserting four assignments of error, two of which are relevant here. ([ECF No. 9](#), PageID #432.) First, she claimed that the appointment of Andrew Saul as Commissioner of the Social Security Administration violated the separation of powers, making the decision in her case constitutionally defective because it was decided by an administrative law judge who derived authority from the Commissioner. (*Id.*) Second, Plaintiff claimed that the ALJ erred in the analysis at step two when she found that Ms. Baumiller's psychological problems did not equate to severe impairments. (*Id.*)

The Magistrate Judge issued a report and recommendation addressing each of the assignments of error and recommended that the Court adopt the ALJ's decision denying Ms. Baumiller's application. ([ECF No. 13](#).) The Magistrate Judge first addressed the separation of powers claim. (*Id.*, PageID #432.) The Magistrate Judge recommended that the Court overrule this assignment of error because Ms. Baumiller lacks standing to challenge the constitutionality of the Social Security Act. (*Id.*, PageID #506–11.)

The Magistrate Judge also recommends that the Court deny Plaintiff's second assignment of error regarding the ALJ's step two determination that Ms. Baumiller did not have severe mental limitations. (*Id.*, PageID #511–15.) The Magistrate Judge

7

found that the ALJ provided substantial evidence for her step two determination because she addressed how Ms. Baumiller was not severely limited in any of the mental function limitation categories and that Dr. Town's opinion supported the ALJ's conclusion. (*Id.*)

### D. Plaintiff's Objections

Plaintiff raises two objections to the Magistrate Judge's report and recommendation. ([ECF No. 14](#).) First, Plaintiff objects that the ALJ did not have constitutional authority to adjudicate her claim. (*Id.*, PageID #522–23.) The Court held oral argument on this objection. Second, Plaintiff objects that substantial evidence supported the ALJ's finding that Ms. Baumiller's mental impairments were not severe. (*Id.*, PageID #523–24.)

## ANALYSIS

The Court reviews de novo the portions of a magistrate judge's report and recommendation to which specific objections were made. 28 U.S.C. §636(b)(1)(C); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). "Objections must be specific, not general" and should direct the Court's attention to a particular dispute. *Howard v. Secretary of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). "De novo review requires the Court to re-examine the relevant evidence a magistrate judge reviewed to determine whether to accept, reject, or modify the report and recommendation." *Scott v. Saul*, No. 1:19-cv-2393, 2021 U.S. Dist. LEXIS 92052, at *12–13 (N.D. Ohio May 14, 2021); *see* 28 U.S.C. 636(b).

Where a party objects, the review is limited to determining whether substantial evidence in the record supports the Commissioner's decision and to

8

reviewing any legal errors de novo. *Wright v. Massanari*, 321 F.3d 611, 614–15 (6th 2003). "Substantial evidence" is more than a scintilla, but less than a preponderance. *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. If substantial evidence supports the Commissioner's findings, then the Court accepts them as conclusive, even if it would have reached a different outcome on the same facts. 42 U.S.C. § 405(g).

## I. Constitutional Authority of the ALJ

Plaintiff objects to the Magistrate Judge's report and recommendation that she lacks standing to challenge the ALJ's decision on constitutional grounds. (ECF No. 13, PageID #506–11; ECF No. 14, PageID #522–23.) The Court reviews this objection de novo. *See, e.g.*, *Molina-Crespo v. United States MSPB*, 547 F.3d 651, 655 (6th Cir. 2008).

### I.A. Standing

Because standing implicates the Court's jurisdiction, the report and recommendation properly considered the issue *sua sponte*. (ECF No. 13, PageID #507.) The Magistrate Judge concluded that Plaintiff could not fairly trace her injury to Defendant because, even if the removal provision in 42 U.S.C. § 902(a)(3) is unconstitutional, Commissioner Andrew Saul still had the authority to delegate power to administrative law judges. (*Id.*, PageID #508.) In reaching this conclusion, the report and recommendation relied on the Supreme Court's decision in *Collins v. Yellin*, 141 S. Ct. 1761, 1788 (2021). (ECF No. 13, PageID #510.) Additionally, the Magistrate Judge reports that Plaintiff did not prove the requirement that the

9

removal provision caused her compensable harm. (*Id.*, PageID #510–11.) Therefore, she did not suffer harm traceable to an unlawful action. (*Id.*, PageID #511.) In short, the report and recommendation concluded that "[t]he mere receipt of an unfavorable decision is not sufficient to establish harm traceable to the alleged unlawful conduct." (*Id.*, PageID #509.)

In response to Plaintiff's objections, Defendant argues that *Collins* ultimately provides no basis for a remand to the agency. (ECF No. 15, PageID #527.) With respect to standing specifically, Defendant points out that *Collins* relieves Plaintiff of the burden to show a connection between unlawful removal provisions and showing injury-in-fact. (*Id.*, PageID #528.) In this way, Defendant focuses more on the ability of Plaintiff to obtain relief in the form of a remand to the agency than on standing. (*Id.*, PageID #529.) Indeed, at oral argument, counsel focused their arguments specifically on the availability and propriety of remand following *Collins*.

In *Collins*, the Supreme Court held that the structure of the Federal Housing Finance Agency violates the separation of powers because Congress enacted a statute that limited its head to removal by the President only for cause. 141 S. Ct. at 1770. Relying on the precedent of *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), the *Collins* Court held that the statutory restriction on the President's power to remove the head of the FHFA violates the Constitution. 141 S. Ct. at 1783–84. In reaching this conclusion, the Supreme Court rejected the argument that the plaintiffs lacked standing because they claimed injury in the form of lost property and could trace their injuries to allegedly unlawful conduct, not the

10

provision of law challenged. *Id.* at 1779. Additionally, the Supreme Court acknowledged that a decision on remand "could easily lead to the award of at least some of the relief that [they] seek." *Id.* In other words, the Supreme Court reaffirmed the principle that "the challenger sustains injury from an executive act that allegedly exceeds the official's authority." *Id.* (quoting *Seila Law*, 140 S. Ct. at 2196).

In the wake of *Collins*, some courts hold that plaintiffs have standing to challenge the Commissioner's administrative benefits determinations. *See, e.g.*, *Tafoya v. Kijakazi*, 551 F. Supp. 3d 1054, 1062 (D. Colo. 2021); *Sylvia A. v. Kijakazi*, No. 5:21-CV-076-M-BQ, 2021 WL 4692293, at *4 (N.D. Tex. Sept. 13, 2021), *report and recommendation adopted*, 2021 WL 4622528 (N.D. Tex. Oct. 7, 2021); *Albert v. Kijakazi*, No. 1:21-CV-0004-HRH, 2021 WL 3424268, at *5 (D. Alaska Aug. 5, 2021). Others disagree and, like the Magistrate Judge here, conclude that the unconstitutionality of the Commissioner's removal statute does not give plaintiffs standing to bring a constitutional challenge. *See, e.g.*, *Rives v. Commissioner of Soc. Sec.*, No. 1:20-CV-02549, 2022 WL 1076216, at *22 (N.D. Ohio Feb. 4, 2022) (collecting cases), *report and recommendation adopted*, 2022 WL 681273 (N.D. Ohio Mar. 8, 2022).

Although the Commissioner argues that "*Collins* relieves Plaintiff of the burden to show a connection between removal restrictions and injury-in-fact for standing purposes" ([ECF No. 15](), PageID #528), this position does not represent a sound reading of the Supreme Court's ruling. *Collins* confirmed that actions taken by an officer subject to an unconstitutional removal provision are not necessarily void

11

*ab initio* and do not necessarily need to be undone. 141 S. Ct. at 1788 n.24. For this reason, the Court agrees with the Magistrate Judge, both in this case and in *Rives*, that Plaintiff lacks standing to advance her constitutional arguments because the Commissioner has not caused her legal harm because the unconstitutional removal statute does not necessarily render void any administrative action the Commissioner undertook directly or through appointment of the administrative law judge.

However, in addition to arguing that Commissioner Andrew Saul's appointment violated the Constitution, Plaintiff makes a claim that the type of bias and lack of accountability the removal power guards against infected her case. (ECF No. 9, PageID #441.) Specifically, Plaintiff notes that the President's termination of Mr. Saul "noted that he had undermined and politicized Social Security disability benefits" and "infringed on the constitutional due process rights of disability applicants." (*Id.*) In this way, Plaintiff argues, the unconstitutional removal statute constitutes "the primary and lead reason" for the President's termination of Mr. Saul. (*Id.*) If true, these sorts of claims sufficiently overlap with the merits of the agency's determination at issue that Plaintiff might have standing. Therefore, out of an abundance of caution, the Court analyzes the merits of Plaintiff's constitutional claim. In doing so, the Court notes that, although she did not raise the issue before the administrative law judge, Plaintiff has not forfeited her constitutional arguments. *See Carr v. Saul*, 141 S. Ct. 1352, 1356 (2021).

    **I.B.   Separation of Powers**

Article II, Section 1 of the Constitution vests the President with "[t]he executive Power." "The entire 'executive Power' belongs to the President alone." *Seila*

*Law*, 140 S. Ct. at 2197. And the President has "the authority to remove those who assist him in carrying out his duties." *Id.* at 2198.

As the head of the Social Security Administration, Congress created a single Commissioner who serves a term of six years and whom the President can remove only for "neglect of duty or malfeasance in office." 42 U.S.C. § 902(a)(3). In *Seila Law*, the Supreme Court held that the structure of a single-member head of an independent agency removable only for cause has "no place in our constitutional structure." 140 S. Ct. at 2201. Further, the Court held that the removal provision is severable from the statute. *Id.* at 2211 (Roberts, C.J., joined by Alito, J., and Kavanaugh, J.); *id.* at 2245 (Kagan, J., concurring in the judgment with respect to severability and dissenting in part, joined by Ginsburg, J., Breyer, J., and Sotomayor, J.). Likewise, in *Collins*, the Supreme Court found a similar structure unconstitutional. 141 S. Ct. at 1784.

Based on *Seila Law* and *Collins*, the removal provision governing the Commissioner violates the separation of powers. *Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022); *see also Tafoya*, 551 F. Supp. 3d at 1058 (noting that the Office of Legal Counsel agrees that the statute governing removal of the Commissioner suffers from the same constitutional defect). These controlling authorities also make the unconstitutional removal provision severable from the remainder of the statute. *See Seila Law*, 140 S. Ct. at 2211 (Roberts, C.J.) & 2245 (Kagan, J.); *Kaufmann*, 32 F.4th at 849.

### I.B.1. Remedy

Against this backdrop, Plaintiff's argument focuses on the remedy for the denial of her claim by an administrative law judge who served under a Commissioner subject to an unlawful removal provision. Plaintiff contends that the Commissioner did not have constitutional authority to delegate his duties to the ALJ. (ECF No. 14, PageID #523.) Therefore, in her view, the proceedings that resulted in the denial of her claim were void, and this matter should be remanded for a new hearing. (*Id.*)

In *Collins*, the Supreme Court held that an unlawful removal provision does not affect the authority of agency officials to act. 141 S. Ct. at 1787–88 & n.23. Although a constitutional infirmity invalidates the statute for removal of the Commissioner, Mr. Saul was properly appointed. "As a result, there is no reason to regard any of the actions taken by the [agency] . . . as void." *Id.* at 1787.

*Collins* provided examples of circumstances in which an unconstitutional removal restriction might cause harm even with a properly appointed agency head. For example, if "the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal" or the "President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way." *Id.* at 1789. In the Court's view, these examples are illustrative, not exhaustive. Although Plaintiff points to statements of the President when he removed Mr. Saul, those statements do not fit within the examples advanced in *Collins*, even interpreted broadly.

To the contrary, the statements at issue regarding Mr. Saul did not go as far as those that *Collins* suggested might cause harm. Indeed, they did not come from the White House or the President himself. Instead, political supporters of the President criticized Mr. Saul, suggesting that the President made a political decision—not one that calls into question the fundamental validity of the agency's actions during Mr. Saul's service as Commissioner. Therefore, the Court concludes that, without more, the unconstitutional removal provision does not render the Commissioner's actions void. On this basis, no remand is required.

### I.B.2. Structural Error

But Plaintiff contends that there is more here. Plaintiff makes an additional argument that the unlawful removal provision harmed her. She claims that Mr. Saul "undermined and politicized Social Security disability benefits" and "infringed on the constitutional due process rights of disability applicants." ([ECF No. 9](), PageID #441.) Because the agency's final benefits determination is the Commissioner's, Plaintiff maintains that the denial of her application for benefits harmed her. (*Id.*, PageID #440.) In this regard, her argument amounts to something of a claim of structural error necessitating a remand.

Theoretically, this sort of error harmed Ms. Baumiller. For two reasons, however, the Court concludes that these issues do not require a remand. First, Plaintiff's claim of harm resulting from changes the Commissioner implemented at the time of her adverse benefits decision are too generalized and disconnected from her particular case to merit remand. None of the grounds for Mr. Saul's removal to which Plaintiff points implicate cases like hers.

Second, nothing in the administrative record of proceedings in her case provides evidence that any of the bias, maladministration, or politicization of which she complains infected the adjudication of her claim. When asked at oral argument for such support, counsel conceded that there was none. At minimum, such a nexus is necessary before consideration of the propriety of remand. *See, e.g.*, *Colbert v. Commission of Soc. Sec. Admin.*, No. 5:20-CV-2234, 2022 WL 556738, at *2 (N.D. Ohio Feb. 24, 2022). Even the key authority on which Plaintiff relies requires a showing of such harm and, without more, does not support imputing an unlawful removal statute to an otherwise valid decision of an administrative law judge. *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137–38 (9th Cir. 2021) (discussing decision of ALJ in Department of Labor Black Lung benefits claim). Finally, the Ninth Circuit's recent decision in *Cody v. Kijakazi*, ___ F.4th ___, No. 21-35553, 2021 WL 4101387 (9th Cir. Sept. 8, 2022), does not support remand either. In *Cody*, the Ninth Circuit addressed a violation of the Appointments Clause. *Id.* at *1. But Plaintiff did not raise a challenge under the Appointments Clause here. (ECF No. 12, PageID #496.) In any event, unlike a violation of the Appointments Clause where the presiding official does not enjoy proper authority to occupy the office, *see Cody*, 2021 WL 410387, at *4, agency action taken by an officer subject to an unconstitutional removal provision is not void *ab initio*, *see Collins*, 141 S. Ct. at 1788 n.24.

For these reasons, the Court **OVERRULES** Plaintiff's first objection.

## II. Step Two Evaluation of Mental Impairments.

Plaintiff's second objection asserts that the ALJ erred in her step two determination by not addressing Dr. Jesse's and the State agency reviewer's findings

16

about Ms. Baumiller's anxiety and depression. (ECF No. 14, PageID #522–24.) Plaintiff argues that the determinations of Dr. Jesse and the State agency reviewers provided diagnostic criteria that, if addressed, would have led the ALJ to find that Ms. Baumiller had severe mental impairments. (*Id.*) Because of this alleged err in the ALJ's analysis, Plaintiff argues that remand is warranted. (*Id.*, PageID #524.)

In step two, the ALJ considers the severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). A "severe" impairment is "any impairment or combination of impairments which significantly limit . . . [a claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). To determine the severity of mental impairments, an ALJ rates a claimant's mental limitation using a five-point scale of "none, mild, moderate, marked, and extreme" in the following four broad functional areas: (1) "understand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself." *Id.* §§ 404.1520a(c)–(d). If a claimant's limitation is rated as none or mild, then generally a claimant's "impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in . . . [a claimant's] ability to do basic work activities." *Id.* § 404.1520a(d)(1).

The Sixth Circuit "construes step two as a *de minimis* hurdle" intended to "screen out totally groundless claims." *Kestel v. Commissioner of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) (citations omitted). On review, the question is "whether the ALJ's decision not to find any limitations arising from the condition in question is supported by substantial evidence." *Bittner v. Commissioner of Soc. Sec.*

17

*Admin.*, No. 3:20-cv-02204, 2022 WL 1458298, at *12 (N.D. Ohio Jan. 18, 2022). In other words, the Court must consider whether substantial evidence supports the ALJ's decision finding Plaintiff's mental health limitations not severe and not including them in the residual functional capacity. Substantial evidence is of such a character that "a reasonable mind might accept [it] as adequate to support a conclusion." *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Here, the Court determines that the ALJ provided sufficient evidence to support a finding that Ms. Baumiller's mental impairments were not severe. Contrary to Plaintiff's assertion, the ALJ specifically acknowledged that Ms. Baumiller had mental health impairments. (ECF No. 12, PageID #522–24; ECF No. 6, PageID #43.) But a medical diagnosis alone "says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Instead, for mental impairment to be severe it must "significantly limit . . . [a claimant's] mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). As the Magistrate Judge addressed in her report and recommendation, the ALJ went through all categories of mental functional limitations, explaining why Ms. Baumiller had only mild limitations in each and why Dr. Hill's opinion supports the ALJ's conclusion that Ms. Baumiller lacked severe mental impairments. (ECF No. 13, PageID #511–15.)

In Plaintiff's objection, she contends that the ALJ erred by failing to address Dr. Jesse's note that Ms. Baumiller had anxiety and depression. (ECF No. 14, PageID #522–24.) An "ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v.*

18

*Commissioner of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)). Plaintiff's objection does not point to any evidence from Dr. Jesse showing how Plaintiff's anxiety and depression prevented her from basic work. (ECF No. 6, PageID, #312–56 & #363–76.) Therefore, the Court finds that the ALJ did not need to address explicitly the evidence from Dr. Jesse in her step two determination or the residual function capacity.

Next, Plaintiff contends that the ALJ erred at step two by failing to address the State agency consultants' conclusions about Plaintiff's mental limitations. (ECF No. 14, PageID #523–24.) As an initial matter, the Court notes that the ALJ acknowledged that the State agency consultants, Dr. Karla Declour and Dr. Juliette Savitcus, "found the claimant had no severe mental impairments." (ECF No. 6, PageID #44.) Although Dr. Declour and Dr. Savitcus noted Plaintiff had depressive, bipolar, and related disorders, they both went through the four categories of mental limitations and opined that Plaintiff had only mild or no limitation in each. (*Id.*, PageID, #88–89 & #97–98.) In essence, Plaintiff requests that the Court reweigh the evidence the ALJ considered. But the Court's function is not to reweigh evidence; rather, the Court only reviews whether a reasonable person could have come to the same conclusion as the ALJ. *See Jones v. Commissioner of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003*); see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir.2007). In this regard, the record allows the Court to determine that a reasonable person could have reached the same conclusion as the administrative law judge.

Accordingly, the Court **OVERRULES** Plaintiff's second objection.

## CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Plaintiff's objections, **ADOPTS** the Magistrate Judge's Report and Recommendation, and **AFFIRMS** the Commissioner's denial of benefits. The Court **DIRECTS** the Clerk to enter judgment accordingly.

**SO ORDERED.**

Dated: September 13, 2022

*/s/ J. Philip Calabrese*

J. Philip Calabrese
United States District Judge
Northern District of Ohio